IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KELVIN J. MILES, #157867           *

               Plaintiff

    v.                       *   CIVIL ACTION NO. AW-09-3211

GARY MAYNARD, et al.           *

              Defendants.

                      ***

## **MEMORANDUM**

In the original and Amended Complaints, Plaintiff raised several medical claims related to chest pains, delay in hepatitis treatments, unexplained weight loss, a painful spinal injury, and lack of biopsy or follow-up evaluation for chest lesions. His Complaint was allowed to proceed under the "imminent danger" exception to 28 U.S.C. § 1915(g)[1] and Defendants were ordered to answer the Complaints.

**Pending Motions**

Plaintiff has filed a Motion for Summary, solely focusing on the allegations raised in his Supplemental Complaint and correspondence. Paper No. 25. Defendant Druckman has filed a Motion to Dismiss or, in the Alternative, for Summary Judgment and an Opposition to Plaintiff's Motion for Summary Judgment. Paper No. 28. Plaintiff filed his Opposition. Paper No. 35. Defendants Baucom, Knable, Maynard, and Stouffer have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and Plaintiff has filed his Opposition.[2] Paper Nos. 43

---

[1]    As Plaintiff has accumulated more than three 28 U.S.C. § 1915(e) dismissals of his prison civil actions, his Complaints filed pursuant to § 1915(a) are otherwise subject to dismissal pursuant to 28 U.S.C. § 1915(g) unless he can show that he "is under imminent danger of serious physical injury."

[2]    Also filed by Plaintiff is an eleventh-hour Supplemental Complaint and Request for Injunctive Relief. Paper No. 52. He raises a conclusory claim of retaliation against the former Commissioner Richard Lanham, claiming that Lanham is still retaliating against him because of this law suit with "the intent to prevent me from getting out of prison." Plaintiff claims his health is deteriorating mentally and physically and he asks the court to appoint counsel and to bring the case to a conclusion. Leave to supplement and to appoint counsel shall be denied in light of the record materials before the court.

and 45.   The case is ready for the undersigned's consideration and the motions may be disposed of without oral hearing.   *See* Local Rule 105.6.   (D. Md. 2010).

**Standard of Review**

**A.  Summary Judgment**

Fed. R. Civ. P. 56(c)(2) provides that summary judgment:

> should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).   The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility."  *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002).   The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v.*

*Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## B. Eighth Amendment

As an inmate claiming denial of medical care in violation of the Eighth Amendment, Miles must prove two elements: one objective and one subjective. First, he must satisfy the objective element by illustrating a serious medical condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). If this first element is satisfied, Miles must then prove the subjective element by showing "deliberate indifference" on the part of prison officials or health care personnel. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Medical personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. at 837. Health care staff are not liable if they "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id*. at 844; *see also Johnson v. Quinones*, 145 F.3d at 167.

Title 42 U.S.C. § 1983 liability on the part of supervisory defendants requires a showing that: "(1) the supervisory defendants failed promptly to provide an inmate with needed medical care, (2) the supervisory defendants deliberately interfered with the prison doctors' performance, or (3) that supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (internal citations omitted); *see also Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir.1984) (supervisory liability for an

inmate's beating by prison guards).

**Analysis**

The record presented to the court reflects that Plaintiff has received constitutionally adequate care from Dr. Druckman. He has a history of hypertension and schizophrenia, is a Hepatitis C ("HCV") carrier, and is regularly seen in the Chronic Care Clinic ("CCC"). With regard to his claims of chest pains, delay in hepatitis treatments, unexplained weight loss, a painful spinal injury, and lack of biopsy or follow-up evaluation for chest lesions, the record reveals the following information.

Over the past two years Plaintiff's weight has peaked at a high of 179 pounds to a low of 150 pounds. As of April 13, 2010, his weight was 165 pounds. He has been given Ensure to increase his caloric intake and to supplement the "vegetarian diet" he maintained as of November 2009.

There is no dispute that Plaintiff has had chronic Hepatitis C ("HCV") for approximately 15 years. He was found ineligible for further evaluation for HCV treatment because of his long-standing need for significant psychiatric management and medications. Defendant Druckman affirms that HCV medications, when administered to inmates taking psychiatric medications, can lead to severe adverse effects, including depression and suicidal tendencies. A decision as to Plaintiff's eligibility for HCV treatment will again be undertaken after he undergoes a bronchoscopy to diagnose a lesion in his lung.

On December 22, 2009, Plaintiff stated that he fell down the stairs in his housing unit. He was evaluated by Nurse Wanda Diaz, who noted that Plaintiff was able to ambulate without difficulty but rose slowly from a sitting position. Diaz indicated that she would refer Plaintiff to a physician's assistant ("P.A.") for further evaluation and treatment. She observed, however, that as Plaintiff left the dispensary he was moving quickly and at ease. Plaintiff submitted sick-call

encounter forms on January 10 and 11, 2010, seeking treatment for injuries to his back, legs, and knees. On January 18, 2010, he was given muscle rub for his back pain. Over the ensuing month, Plaintiff complained of back pain, but he either refused sick-call visits or offered no complaints of back pain when seen by medical staff. On February 28, 2010, Plaintiff was seen by Dr. Colin Ottey and complained of pain in his lower back and neck. He stated that the pain was aggravated by sitting, standing, ascending stairs, lying or resting, and sneezing, and there were no factors that relieved the pain. Ottey's examination revealed some tenderness to Plaintiff's spine and he prescribed Motrin for pain and Baclofen, a muscle relaxant.

Plaintiff was first examined by Dr. Druckman on July 29, 2009, in the CCC. He offered no complaints of chest pain at that time. On October 14, 2009, however, Plaintiff complained of several problems and sought a copy of a chest CT report from 2008. Druckman noted the record,[3] and immediately ordered a chest x-ray to see if the lung lesion had resolved, and requested another chest scan. The chest x-ray taken on October 15, 2009, showed a one-inch linear density in Plaintiff's right middle lobe, unchanged since an x-ray of June 17, 2008. A repeat CT scan was performed on October 26, 2009, and showed that the original area in the right middle lobe was unchanged and had a new adjacent, 8 millimeter satellite nodule on the side closest to the center of Plaintiff's chest. The impression of the radiologist was that this could be a type of carcinoma or a persistent form of infection.[4]

On November 13, 2009, P.A. Emily Staub noted the results of the CT scan and her discussions with Dr. Druckman. Approval was obtained for Plaintiff to receive a pulmonology

---

[3]     According to Dr. Druckman, the July 15, 2008 report showed an abnormal mass in the lateral right middle lobe of Plaintiff's lung. Plaintiff was treated with the antibiotic Azithromycin at that time. That record, however, is not provided. Rather, the record before the court shows that in June of 2008, a C-X-ray of Plaintiff's chest was ordered and he was given Azitromycin for six days.

consultation. He underwent the consultation at Bon Secours Hospital on January 13, 2010.[5] The pulmonologist's differential diagnosis included sarcoidosis, infection, and malignancy, and a bronchosopy was recommended with a biopsy or treatment with antibiotics, then a repeat CT scan. The pulmonologist also recommended a pulmonary function test to assess Plaintiff's lung function. Plaintiff was approved for another pulmonary consultation to undergo a bronchoscopy.

Plaintiff also names Secretary of the Department of Public Safety and Correctional Services ("DPSCS") Maynard, Commissioner Stouffer, Medical Director Baucom, and DPSCS Contract Operations Manager Knable as Defendants. These State Defendants adopt by reference the facts contained in Dr. Druckman's dispositive filing and claim that Plaintiff has failed to set out specific allegations against them, but merely raises conclusory allegations of liability.

After review of the briefing filed by all parties, the undersigned finds that the Plaintiff was properly evaluated and treated by Dr. Druckman for his medical complaints, including his lung abnormality, back pain, weight loss and other chronic problems. Druckman ordered a dietary supplement, diagnostic testing to access Plaintiff's pulmonary problems, and observed that Plaintiff was not a candidate for the HCV protocol due to his medication treatment for schizophrenia. Further, Plaintiff has failed to allege how the named State Defendants are liable either on a personal or supervisory basis. Merely stating that these parties were "put on notice of his delay[ed] treatments and untreated medical conditions," without providing supporting facts or documentation is insufficient to state a claim against the State Defendants. For these reasons, Defendants' dispositive motions shall be granted and Plaintiff's Motion for Summary Judgment shall be denied.

---

[4]     Plaintiff's examinations in the CCC during this time revealed no abnormalities with his respiratory functions or chest pain.

[5]     Defendant Druckman states that as of January 2010, Plaintiff is no longer under his care.

Counsel for Dr. Druckman shall, however, provide the Court a status report with regard to Plaintiff's pulmonary treatment and diagnosis.

Date:  August 5, 2010

                              _____/s/_____
                              Alexander Williams Jr.
                              United States District Judge